IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| STATE FARM FIRE & CASUALTY COMPANY, an Illinois Corporation, | ) ) ) | CIVIL NO. 13-00185 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| vs. | ) | |
| | ) | |
| HENRY K KAAIHUE, JR.; and ADVANCED HOME BUILDER, LLC, a Hawaii Company, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

I.        **INTRODUCTION.**

         Plaintiff State Farm Fire & Casualty Company asks this court to determine that it has no duty under homeowner's and umbrella insurance policies issued to Defendant Henry K. Kaaihue, Jr., to defend or indemnify him with respect to claims filed against him in state court.[1]  Because the state-court complaint does not assert claims for which there is any possibility of coverage under the insurance policies, State Farm has no duty to defend or indemnify arising from those policies.

_____

         [1]State Farm also sought a declaration concerning whether it must provide insurance coverage to Defendant Advanced Home Builders, LLC.  At the hearing, counsel for Advanced Home Builders represented that it had not tendered and would not be tendering a defense of the state-court action to State Farm.  In reliance on this representation, State Farm dismissed all claims concerning Advanced Home Builders.

II.        **BACKGROUND FACTS**.

On January 30, 2013, Allstate Insurance Personal Lines, as subrogee of Steven and Faith Coloma, filed a state-court action against Five M Plumbing, LLC, Kaaihue, and Advanced Home Builders.  See ECF No. 19-2.  This state-court complaint alleged that Allstate's insured, Steven Coloma, had property on which he was constructing a new house.  See State-Court Complaint ¶ 7.  In relevant part, the state-court complaint alleges that "Coloma hired Kaaihue, and/or his company, Advanced [Home Builders,] to assist with various tasks through the construction project."  Id. ¶ 9.  The state-court complaint further alleges that improper construction practices caused two water lines to separate at different times, resulting in substantial damage.  ¶¶ 10-12.  Allstate allegedly paid an insurance claim by Coloma of $150,731.44.  Id. ¶ 13.

Two claims were asserted against Kaaihue in the state-court complaint.  First, Allstate asserted a breach of contract claim, alleging that Kaaihue and/or Advanced Home Builders had contracted with Coloma to provide various services for the construction of Coloma's home; that implied in this contract was that all work performed would be done in a reasonable, professional manner, consistent with industry standards; and that Kaaihue and/or Advanced Home Builders had breached the contract by failing to ensure that the water lines were properly

2

connected, causing damage for which Allstate paid insurance claims of $150,731.44.  See State-Court Complaint ¶¶ 24-27.

Second, Allstate alleged that Kaaihue and/or Advanced Home Builders had been negligent in failing to properly connect the water lines during the construction of Coloma's house.  The negligence claim incorporates by reference the preceding paragraphs of the state-court complaint, including the breach of contract allegations.  It then alleges that Kaaihue owed a duty to ensure that all plumbing work was installed in a reasonably safe, professional manner that was consistent with industry standards, but that Kaaihue breached that duty, causing damage. See State-Court Complaint ¶¶ 28-29, 31.

Kaaihue apparently tendered the defense of the state-court action to his insurance carrier, State Farm, under his homeowner's and umbrella insurance policies.

Kaaihue's homeowner's insurance policy, number 51-BQ-8918-4, listed him as the insured.  See ECF No. 19-3, PageID # 133.  Advanced Home Builders was not named as an additional insured under the policy.  See id.  The personal liability section of Kaaihue's homeowner's insurance policy, Coverage L, provides insurance coverage when "a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**."  See ECF No. 19-3, PageID # 151.  The policy defines

"**occurrence**" as "an accident, including exposure to conditions which results in . . . **bodily injury** . . . or . . . **property damage**." Id., PageID # 138.  The homeowner's insurance policy excludes from coverage bodily injury or property damage that (1) "is either expected or intended by the **insured**," (2) "aris[es] out of **business** pursuits of any **insured**," and/or (3) "aris[es] out of the rendering or failing to render professional services." Id., PageID # 152.  It also excludes from Coverage L "liability . . . assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**." Id., PageID # 153.

Kaaihue also had a personal liability umbrella policy, number 51-BW-5154-5, with State Farm.  See ECF No. 19-4, PageID # 163.  This policy covered Kaaihue and Jamie Bell-Kaaihue, but not Advanced Home Builders.  See id.  Like Kaaihue's homeowner's insurance policy, the umbrella policy excludes coverage for losses (1) "arising out of any **insured** providing or failing to provide a professional service," (2) "arising out of any **insured's business property** or **business** pursuits of any **insured**," or (3) "**bodily injury** or **property damage** which is . . . expected or intended by the **insured**." Id., PageId # 174, 176.  The umbrella policy also excludes from coverage "liability imposed on or assumed by any **insured** through any unwritten or written agreement." Id., PageID # 176.

4

III.        **SUMMARY JUDGMENT STANDARD.**

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The movants must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.

Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., Inc., 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). See Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg.

Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. Id. When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." Id.

## IV.  STATE FARM HAS NO DUTY TO DEFEND OR INDEMNIFY KAAIHUE.

### A.  General Law Concerning Insurance Policies.

This is a diversity action. See Complaint ¶¶ 4-5. Federal courts sitting in diversity apply state substantive law and federal procedural law. See Snead v. Metro. Prop. & Cas. Ins. Co., 237 F.3d 1080, 1090 (9th Cir. 2001). When interpreting state law, a federal court is bound by the decisions of a state's highest court. Ariz. Elec. Power Coop. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995). In the absence of such a decision, federal

courts attempt to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.  Id.; see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the extent this case raises issues of first impression, our court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." (quotation and brackets omitted)).

Under Hawaii law, general rules of contract construction apply to the interpretation of insurance contracts. Dawes v. First Ins. Co. of Haw., 77 Haw. 117, 121, 883 P.2d 38, 42 (1994).  Insurance policies must be read as a whole and construed in accordance with the plain meaning of its terms, unless it appears that a different meaning is intended.  Id. at 121, 883 P.2d at 42; First Ins. Co. of Haw. v. State, 66 Haw. 413, 423, 665 P.2d 648, 655 (1983); see also Haw. Rev. Stat. § 431:10-237 (Michie 2011) ("[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy").

Because insurance contracts are contracts of adhesion, they must be construed liberally in favor of the insured, and any ambiguities must be resolved against the insurer.  Put another way, the rule is that policies are to be construed in accordance

with the reasonable expectations of a layperson.  Tri-S Corp. v. W. World Ins. Co., 110 Haw. 473, 489, 135 P.3d 82, 98 (2006) (citations omitted); Dawes, 77 Haw. at 131, 883 P.2d at 42.

The burden is on the insured to establish coverage under an insurance policy.  See Sentinel Ins. Co. v. First Ins. Co. of Haw., 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (1994) (as amended on grant of reconsideration).  The insurer has the burden of establishing the applicability of an exclusion.  See id. at 297, 875 P.2d at 914.

The duty to indemnify is owed "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion." Dairy Road Partners v. Island Ins., 92 Haw. 398, 413, 922 P.2d 93, 108 (2000).  The obligation to defend an insured is broader than the duty to indemnify.  The duty to defend arises when there is any potential or possibility for coverage.  Sentinel, 76 Haw. at 287, 875 P.2d at 904.  However, when the pleadings fail to allege any basis for recovery under an insurance policy, the insurer has no duty to defend.  Pancakes of Haw. v. Pomare Props., 85 Haw. 286, 291, 944 P.2d 83, 88 (1997).  In other words, for State Farm to obtain summary judgment on its duty to defend, it must prove that it would be impossible for a claim in the underlying lawsuit to be covered by Kaaihue's insurance

policies.  See Dairy Road Partners, 92 Haw. at 412-13, 922 P.2d at 107-08.

> **B.  State Farm Has No Duty to Defend or Indemnify Kaaihue Under the Policies.**
>
> **1.  The Breach of Contract and Negligence Claims Asserted in the State-Court Action Do Not Trigger a Duty to Defend or Indemnify Kaaihue Because They are Not Based on "Occurrences."**

The breach of contract and negligence claims asserted in the underlying state-court action do not trigger State Farm's duty to defend or duty to indemnify.  Neither claim involves an "occurrence," or an accident.

In Burlington Insurance Company v. Oceanic Design and Construction, Inc., 383 F.3d 940, 946-48 (9th Cir. 2004), the Ninth Circuit Court of Appeals, applying Hawaii law, considered the definition of "accident" as discussed by the Hawaii Supreme Court in Hawaiian Holiday Macadamia Nut Co. v. Industrial Indemnity Company, 76 Haw. 166, 872 P.2d 230 (1994).  The Ninth Circuit determined that Burlington Insurance Company owed no duty to defend Oceanic Design and Construction, Inc., against contract and contract-related tort claims under a commercial general liability ("CGL") insurance policy.  Oceanic had contracted to build a single-family residence for certain homeowners.  Id. at 943.  After construction was completed, the homeowners refused to pay Oceanic because they were not satisfied with the work.  Id. Oceanic sued the homeowners in Hawaii state court, alleging that

they had breached the contract by failing to pay for the construction. Id. The homeowners filed a counterclaim against Oceanic, asserting claims for, among other things, negligent breach of contract and negligent infliction of emotional distress. Id. Burlington agreed to defend Oceanic subject to a reservation of Burlington's rights under the CGL policy and filed a federal action seeking a declaration that it owed no duty to defend or indemnify Oceanic. Id. The federal district court granted summary judgment in favor of Burlington, concluding that the homeowners' claims against Oceanic were not covered by the insurance policy. Id. at 944. Oceanic appealed. Id.

On appeal, the Ninth Circuit noted that the insurance policy "cover[ed] claims for liability for 'bodily injury' or 'property damage' if 'caused by an occurrence,'" which was defined "as 'an accident, including continuous or repeated exposure to substantially the same general harmful conditions.'" Id. at 943, 945. Applying the Hawaii Supreme Court's definition of "accident," the Ninth Circuit concluded that the homeowners' claim for negligent breach of contract was not covered by the policy, reasoning:

> In Hawaii, an occurrence cannot be the
> expected or reasonably foreseeable result of
> the insured's own intentional acts or
> omissions. If Oceanic breached its
> contractual duty by constructing a
> substandard home, then facing a lawsuit for
> that breach is a reasonably foreseeable
> result.

11

Id. at 948 (quotation marks omitted).

In Burlington, the underlying complaint alleged a breach of contract based, in part, on alleged failures to plan, supervise, inspect, and construct a residence.  Because the allegations of breaches of duty merely described how the contract to build a residence was breached, the Ninth Circuit stated that "the Court cannot fairly construe this language to state a separate independent cause of action for negligence." Burlington, 383 F.3d at 948.  Those claims were contract-related tort claims that did not trigger the duty to defend.

In 2010, the Intermediate Court of Appeals ("ICA") for the State of Hawaii decided Group Builders, Inc. v. Admiral Insurance Company, 123 Haw. 142, 231 P.3d 67 (Ct. App. 2010). The ICA examined Burlington and noted that authorities were split as to whether defective workmanship was an "occurrence" for purposes of a CGL policy.  The ICA further noted that the majority of jurisdictions held that claims of poor workmanship were not "occurrences."  See 123 Haw. at 148, 231 P.3d at 73. The ICA adopted the majority position and held that, "under Hawai`i law, construction defect claims do not constitute an 'occurrence' under a CGL policy.  Accordingly, breach of contract claims based on allegations of shoddy performance are not covered under CGL policies."  Id.

In 2011, Hawaii enacted a statute that applied to all liability insurance policies issued and in effect as of June 3, 2011.  That statute, section 431: 1-217(a), states

> For purposes of a liability insurance policy that covers occurrences of damage or injury during the policy period and that insures a construction professional for liability arising from construction-related work, the meaning of the term "occurrence" shall be construed in accordance with the law as it existed at the time that the insurance policy was issued.

Section 431: 1-217(a) does not appear to be applicable because it applies to insurance policies insuring "a construction professional for liability arising from construction-related work."  Here, Kaaihue is not seeking coverage under an insurance policy that insures a construction professional for liability. Instead, he is seeking coverage under his homeowner's and umbrella insurance policies.  Even if section 431: 1-217(a) applies, the law in effect at the time the insurance policy issued was that of <u>Burlington</u> and <u>Group Builders</u>.

Recently, this court examined another CGL policy, determining that contract claims concerning construction defects are not occurrences.  <u>See</u> <u>Ill. Nat'l Ins. Co. v. Nordic PCL Constr., Inc.</u>, 870 F. Supp. 2d 1015, 1027-28 (D. Haw. 2012). Although not "occurrences" under the CGL policy, the court noted that there might be other claims that could be asserted against the insurer.  For example, the court noted that a bad faith claim

13

might be asserted against the insurer.  See id, 2013 WL 5739639,

*7 (D. Haw. Oct. 22, 2013).

Burlington, Group Builders, and Nordic involved CGL

insurance policies.  Here, Kaaihue seeks insurance coverage under

his homeowner's and personal umbrella insurance policies for

claims arising out of a contract to help construct a house.  This

case therefore presents an even stronger case than Burlington,

Group Builders, and Nordic for a determination that the state-

court complaint does not allege anything that can be considered

an "occurrence" for purposes of the policies.  Allstate's breach

of contract and negligence claims based on allegations of poor

workmanship are simply not claims covered under Kaaihue's

insurance policies because they are not "occurrences."  Instead,

they involve claims that Kaaihue did not properly connect water

pipes, making it reasonably foreseeable that property damage

would flow from that allegedly shoddy workmanship.

Kaaihue argues that the claims against him in the

state-court complaint are not factually supported; he contends

that he did not actually install the plumbing that caused the

problems.  See Declaration of Henry K. Kaaihue, Jr., ¶ 5, ECF No.

27-1, PageID # 198.  His denial of liability does not trigger

insurance coverage.  Hawaii adheres to the "complaint allegation

rule." Burlington, 383 F.3d at 944 (citing Pancakes of Hawaii,

14

<u>Inc. v. Pomare Props. Corp.</u>, 85 Haw. 286, 994 P.2d 83 (Haw. Ct.

App. 1997)).  In that regard,

> The focus is on the alleged claims and facts.
> The duty to defend "is limited to situations
> where the pleadings have alleged claims for
> relief which fall within the terms for
> coverage of the insurance contract.  'Where
> pleadings fail to allege any basis for
> recovery within the coverage clause, the
> insurer has no obligation to defend.'"

<u>Id.</u> at 944-45 (citing <u>Hawaiian Holiday Macadamia Nut Co. v.</u>

<u>Indus. Indem. Co.</u>, 76 Haw. 166, 872 P.2d 230)).  Here, the state-

court complaint fails to allege any claim for which there is

coverage, as none of the alleged damage was caused by an

"occurrence."

Kaaihue also argues that there is an "occurrence"

because the complaint asserts a claim of negligence.  At the

hearing, Kaaihue clarified this argument, noting that Allstate's

negligence claim does not describe the source of any duty

underlying the claim.  Kaaihue argues that the negligence claim

in the state-court complaint should not be read as duplicative of

the breach of contract claim; he says that the duty referred to

in the negligence count must be based on something other than the

contract, such as carelessness in bumping into the pipes or

providing advice.  But there is no pleading requirement

preventing duplicative claims, and neither of Kaaihue's

hypothecations involves a fair reading of the state-court

complaint.  Applying the complaint allegation rule, the court

15

reasonably reads the negligence claim asserted against Kaaihue in the state-court complaint as alleging that the duty flowed from the provision of the professional services for which Coloma paid Kaaihue, even if Coloma did not at the outset hire Kaaihue specifically to work on the water pipes.

The state-court complaint alleges that Coloma hired Kaaihue (and/or his company) "to assist with various tasks throughout the construction project." See State-Court Complaint ¶ 9; see also ¶ 24.  It alleges that water lines at the house separated, causing substantial damage.  Id. ¶¶ 10-11.  It then alleges that a "subsequent investigation" indicated that the water lines separated "due to improper construction practices and a failure to properly attach and bond polyvinyl chloride pipes together during installation of the plumbing system." Id. ¶ 12.  It further alleges that, implied in Kaaihue's contract with Coloma, was a requirement that "all work would be performed in a reasonable, professional manner and consistent with industry custom and standards." Id. ¶ 25.  It then alleges that Kaaihue and/or his company breached the contract "by failing to ensure the . . . plumbing lines within the newly constructed house were properly connected and bonded." Id. ¶ 26.

The negligence claim then "realleges all preceding paragraphs as though fully set forth herein." Id. ¶ 28.  The negligence claim goes on to allege that Kaaihue owed a duty to ensure that all plumbing "would be installed in a reasonably

16

safe, professional manner and installed consistent with industry custom and standards." Id. ¶ 29.   Under these circumstances, the only reasonable reading of the state-court complaint is that Kaaihue owed a duty to construct the house in a professional manner as a result of his contract to assist with various tasks throughout the construction project.   This in no way implicates any "occurrence."

> ### 2. Coverage for the Breach of Contract and Negligence Claims Is Excluded Under Both Policies.

Although the underlying state-court complaint asserts what it calls a negligence claim, there is no possibility of insurance coverage under the policies because the coverage excludes business pursuits and professional services. Accordingly, even if the court assumes that the underlying complaint asserts a claim of property damage arising out of an "occurrence," the purported negligence claim would be excluded from coverage.

Both the homeowner's and the umbrella insurance policies excluded coverage for liability arising out of a contract.   The homeowner's policy excludes from Coverage L "liability . . . assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**." Id., PageID # 153.   The umbrella policy excludes from coverage "liability imposed on or assumed by any **insured** through any unwritten or written agreement." Id.,

17

PageID # 176.   The state-court complaint alleges that Coloma hired Kaaihue and/or Advanced Home Builders to assist with various tasks throughout the construction project.   See State-Court Complaint ¶¶ 9, 24.   It alleges that Kaaihue and/or his company breached the contract by failing to perform construction work in a reasonable, professional manner consistent with industry custom and standards.   Id. ¶¶ 25-27.   Based on the same facts, the state-court complaint alleges that Kaaihue (and/or his company) owed a duty to ensure that the house's plumbing was installed in a reasonable, professional manner consistent with industry custom and standards.   Id. ¶ 29.   The state-court complaint asserts negligence based on a breach of that duty.   Id. ¶ 30.   These allegations "arise out of" Kaaihue's contractual duties with respect to the construction of Coloma's house.   The homeowner's and umbrella policies exclude coverage for liability "arising out of" a contract (or in connection with an insured's business).   The exclusions bar coverage notwithstanding Kaaihue's statement denying that he installed the faulty pipes, as this court is required by Hawaii law to look to the allegations of the state-court complaint, not to an insured's defense.   See Burlington, 383 F.3d at 944.

Both policies also exclude coverage for liability "arising out of" the provision of or failure to provide professional services and "arising out of" Kaaihue's business pursuits.   See Homeowner's Policy, ECF No. 19-3, PageId # 152;

Umbrella Policy, ECF No. 19-4, PageId # 174.  The state-court complaint is clearly based on Kaaihue's business conduct or provision of professional services, as it is allegedly based on his faulty installation of plumbing arising out of a construction contract.  See Armed Forces Ins. Exchange v. Transam. Ins. Co., 88 Haw. 373, 379, 966 P.2d 1099, 1105 (Ct. App. 1998) (defining "business pursuits" as used in homeowner's policies as referring "to activities which are conducted on a regular or continuous basis, for the purpose of earning income, profit, or as a means of livelihood"); Homeowner's Policy, ECF No. 19-3, PageID # 137 (defining "business" as "a trade, profession or occupation"); Umbrella Policy, ECF No. 19-4, PageID # 169 (also defining "business" as "a trade, profession or occupation").  Coverage is therefore excluded under the "business pursuits" and "professional service" exclusions of the policies.  Again, although Kaaihue denies having installed the faulty pipes and claims that, because he was not licensed to install the pipes, the installation could not be considered his profession, the court adheres to the complaint allegation rule in determining that the state-court complaint does not assert a claim for which there is any possibility of coverage.  See Burlington, 383 F.3d at 944.  Instead, the state-court complaint alleges that liability arises out of Kaaihue's contract for professional services concerning the construction of the house.  Such liability falls outside the coverage provided by the policies

because it "arises out of" Kaaihue's business pursuits and professional services.

Kaaihue's argument that there should be coverage because he did not actually install the faulty pipes ignores the contours of the claim against him.  Kaaihue cannot create coverage for uncovered claims by disputing the factual predicate of the claims.  For example, assuming that an insurance policy excluded coverage for "intentional conduct," an insurer would have no duty to defend or indemnify its insured from a case involving alleged intentional conduct, even if the insured claimed that he or she had been misidentified in the underlying complaint.  Regardless of whether the insured committed the "intentional act," coverage would be excluded for an assertion of an "intentional act."  The court's focus must be on the allegations in the state-court complaint, not on what the insured says the facts are.  See Burlington, 383 F.3d at 944-45.

The court is not without sympathy for any wrongly sued insured who seeks insurance coverage.  However, the governing law does not broaden an insurer's coverage obligations based on an allegedly inaccurate factual premise in a claim against the insured.

### C.   No Rule 56(d) Continuance is Warranted.

In his declaration, Kaaihue suggests that the court should continue the hearing on the summary judgment motion.  See Kaaihue Decl. ¶ 14, ECF No. 27-1, PageID # 201.  Pursuant to Rule

56(d) of the Federal Rules of Civil Procedure, after a motion for summary judgment is filed, "if a nonmovant shows by affidavit or declaration that, for some specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.  Fed. R. Civ. P. 56(d). In 2010, FRCP Rule 56 was amended, and the advisory committee noted that "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)."  Fed. R. Civ. P. 56(d) advisory comm. nn.  Accordingly, the case law regarding subdivision (f), prior to the amendments, applies.  Rule 56(d) of the Federal Rules of Civil Procedure therefore permits a district court to continue a summary judgment motion "upon a good faith showing by affidavit that the continuance is needed to preclude summary judgment."  California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998) (interpreting the former Rule 56(f) of the Federal Rules of Civil Procedure).

A party requesting a Rule 56(d) continuance bears the burden of (1) filing a timely application that specifically identifies relevant information; (2) demonstrating that there is some basis to believe that the information sought exists; and (3) establishing that such information is essential to resist the summary judgment motion.  See Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1130 (9th

Cir. 2004) (citation omitted); <u>accord</u> <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 966 n.3 (9th Cir. 2009) ("Rule 56([d]) requires a party seeking postponement of a summary judgment motion to show how additional discovery would preclude summary judgment and why it cannot immediately provide specific facts demonstrating a genuine issue of material fact." (punctuation, quotation marks, and citation omitted)).

Kaaihue says that a planned deposition was postponed, but he fails to explain why a continuance of the present motion is therefore necessary.  He does not, for example, explain what facts a deponent might have provided or how those facts could demonstrate that there is a genuine issue of fact precluding summary judgment.  No Rule 56(d) continuance is justified under the circumstances.

**V.       CONCLUSION.**

For the foregoing reasons, summary judgment is granted in favor of State Farm.  This disposes of all claims and all parties in this action.  Accordingly, the Clerk of the Court is directed to enter judgment in favor of State Farm and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 13, 2013.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

<u>State Farm Fire & Casualty Co. v. Kaaihue, Jr.</u>, Civ. No. 13-00185 SOM/BMK; ORDER GRANTING MOTION FOR SUMMARY JUDGMENT